Dear Senator Bild:
This letter is in response to your request for an opinion as to the meaning of a certain provision in Senate Bill No. 663, Eighty-Third General Assembly, Second Regular Session. Specifically, you ask:
 Does a physician having malpractice coverage of $200,000 per occurrence and $600,000 aggregate for one year comply with Section 3 of SB 663 of the second regular session of the 83rd General Assembly?
The section in question in Senate Bill No. 663 provides as follows:
 1. Beginning on January 1, 1987, any physician or surgeon who is on the medical staff of any hospital located in a county which has a population of more than seventy-five thousand inhabitants shall, as a condition to his admission to or retention on the hospital medical staff, furnish satisfactory evidence of a medical malpractice insurance policy of at least five hundred thousand dollars. The provisions of this section shall not apply to physicians or surgeons who:
 (1) Limit their practice exclusively to patients seen or treated at the hospital; and
 (2) Are insured exclusively under the hospital's policy of insurance or the hospital's self-insurance program.
 2. This section shall not in any way limit or restrict the authority of any hospital in this state to issue rules or regulations requiring physicians or other health care professionals to carry minimum levels of professional liability insurance as a condition of membership on a hospital medical staff.
Although the physician in your example maintains malpractice insurance of $600,000 in the aggregate for one year, the coverage is limited to $200,000 per occurrence. In other words, the physician starts each year with coverage of $600,000 for medical malpractice claims. During that year, all claims may be satisfied from this insurance coverage at a limit of $200,000 per occurrence until the $600,000 is exhausted. The question is whether such coverage meets the requirement of the statute that certain physicians maintain medical malpractice insurance of at least $500,000. In our opinion, it does not. The meaning of the statute must be determined in accordance with certain well established rules of statutory construction. Legislative intent must be ascertained by giving effect to the plain language of the statute when viewed as a whole. A. B.v. Frank, 657 S.W.2d 625, 628 (Mo. banc 1983). Legislative intent and the meaning of the words used in the statute can also be derived from the general purposes of the legislative enactment, and further insight into the legislature's object can be gained by identifying the problem sought to be remedied and the circumstances and conditions existing at the time of enactment. Sermchief v. Gonzales, 660 S.W.2d 683, 688 (Mo. banc 1983).
The language clearly requires a medical malpractice insurance policy of at least $500,000. It is contained in a section which is part of a legislative enactment concerned with identifying the number of medical malpractice cases existing in this state and in setting standards and limitations for the recovery of damages as a result of acts constituting medical malpractice. Although Section 5.1 of Senate Bill No. 663 limits the recovery by one plaintiff to no more than $350,000 per occurrence for "noneconomic damages" from any one defendant, there is no ceiling on the total amount of recovery from any one defendant. Therefore, the legislature clearly contemplated recoveries by individual plaintiffs of amounts exceeding $500,000 from any one defendant.
Because of this, we construe the language of the section of Senate Bill No. 663 quoted above as requiring the maintenance of a medical malpractice insurance policy capable of applying at least $500,000 against the claim of a single individual.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General